## Arroyo *v.* Chesapeake Insurance Company (et al., Appellant).

Argued September 13, 1966.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Thomas F. Wilson,* with him *William G. Giltinan* and *Edward P. Clayman,* for appellant.

*Sol Henry Kitei,* for appellee.

OPINION BY HOFFMAN, J., November 17, 1966:

The Chesapeake Insurance Company, a Maryland corporation, was declared insolvent on November 12, 1965.   The Circuit Court of the City of Baltimore named Francis Burch, Maryland Insurance Commissioner, as statutory receiver.   Commissioner Burch was directed to liquidate the corporation and to take possession of its assets in his own name.

The company's business had been suspended in this Commonwealth by the Pennsylvania Insurance Commissioner on May 27, 1965. However, no ancillary receiver was appointed here.

On March 16, 1966, plaintiff, Juan Arroyo, brought this action in foreign attachment against the Chesapeake Company in the County Court of Philadelphia, naming the Philadelphia General Adjustment Bureau as garnishee. Plaintiff alleged that he performed repair work on certain automobiles for Chesapeake and that checks which it issued in payment for this work were later dishonored.

On March 25, 1966, the Maryland Insurance Commissioner filed a petition to dissolve the attachment. He asserted that he held title to all of Chesapeake's assets by virtue of the laws of Maryland, and that, consequently, the garnished funds were immune from attachment. He also filed preliminary objections attacking the court's jurisdiction. The petition was dismissed and the preliminary objections overruled. The Insurance Commissioner now appeals.

Appellant argues that the full faith and credit clause of the federal Constitution compels our recognition of his standing as statutory receiver and an acknowledgment of his title to the assets of the Chesapeake Company. U. S. Const., Art. 4, §1. We agree.

Appellant is more than a mere officer of the Maryland Court.[1] He is the person designated by the law of that state to take the property of a dissolved insurance corporation and to hold and dispose of it for the benefit of creditors and other interested parties. *Relfe*

---

[1] The Uniform Insurer's Liquidation Act, Md. Code Annot. (1957), Art. 48A, §145 provides: "As a domiciliary receiver, the Commissioner shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books and records of the insurer, wherever located, as of the date of entry of the order directing him to . . . liquidate a domestic insurer. . . ."

*v. Rundle,* 103 U. S. 222 (1880), *Commonwealth ex rel. v. Union Casualty Insurance Co.,* 287 Pa. 6, 10-11, 134 A. 435 (1926). In these circumstances, our courts are obliged by the federal Constitution to recognize his title as successor to the insolvent company. *Clark v. Williard,* 292 U. S. 112 (1934).

Appellant further asserts that, under Maryland law, his appointment alone is sufficient to bar any subsequent attachment proceeding against the insolvent company. Md. Code Annot. (1957), Art. 48A, §151. Consequently, he argues, the present suit must be dismissed, if full faith and credit are to be given to the statutes of that state.

This contention is accurate only in part. A state may choose to subordinate the ownership of foreign *and* local statutory receivers to the liens of later-attaching creditors, so long as its policy is applied in an even-handed fashion; it may not, however, work a forbidden discrimination between corporations organized within and without its boundaries. *Clark v. Williard,* 294 U. S. 211 (1935). In the words of the draftsmen of the Restatement 2d, Conflict of Laws: "[F]ull faith and credit requires . . . that a statutory successor appointed in a sister State be given the same rights as a local statutory successor would have." §546a (Tentative Draft No. 11, 1965); cf. Cheatham, "The Statutory Successor, the Receiver, and the Executor in Conflict of Laws," 44 Columbia L. Rev. 549 (1944).

If, therefore, the statutory successor of an insolvent Pennsylvania insurance corporation would prevail over a subsequent attaching creditor in our courts, the Maryland Insurance Commissioner is constitutionally entitled to a similar precedence.

Under our statutes, the Pennsylvania Insurance Commissioner is required to suspend the entire business of an insolvent domestic insurer, before seeking appointment as statutory receiver. The Insurance Department Act of May 17, 1921, P. L. 789, as amended,

§502, 40 P.S. §202. From the date of such suspension: ". . . no action at law or equity shall be commenced or prosecuted nor shall any judgment be entered against nor shall any execution or attachment be issued or prosecuted against the suspended company. . . ." Cf. *Hirsch v. Bunker Hill Mutual Insurance Co.,* 389 Pa. 92, 132 A. 2d 212 (1957). On the other hand, §501 of The Insurance Department Act, 40 P.S. §201, relating to the suspension within the Commonwealth of the business of insolvent *foreign* insurers, contains no comparable language.

In view of the provisions of §502, it is clear that the liquidator of an insolvent Pennsylvania insurance company would not be subjected in our courts to liens acquired by subsequent attaching creditors. Full faith and credit requires that Maryland's statutory receiver be accorded the same protection against liens acquired here after his appointment. An opposite result would work a discrimination which we are constitutionally forbidden to make. *Clark v. Williard,* 294 U. S. 211 (1935).

We hold, therefore, that plaintiff Arroyo's writ of attachment, issued more than four months after the appointment of appellant as statutory receiver for the insolvent Chesapeake company, must be dissolved.

In rejecting appellant's contentions, the lower court relied on two of our decisions holding that a foreign attachment will not be vacated where it is issued before the appointment of an ancillary receiver in this Commonwealth, even though a primary receiver has already been appointed at the defendant corporation's domicile. *Smith v. Electric Machinery Co.,* 83 Pa. Superior Ct. 143 (1924); *Nazareth Cement Company v. Union Indemnity Company,* 116 Pa. Superior Ct. 506, 177 A. 64 (1935). We can see no justification for a rule which allows the assets of a foreign insolvent to be thus dismembered by local creditors. In the present case, for example, the Chesapeake Company has been

in the hands of a statutory receiver for nearly a year. The mere fact that no ancillary receiver has been appointed in this Commonwealth should not entitle Pennsylvania residents to a preferred claim on the insolvent's local assets.

The *Smith* and *Nazareth* cases were grounded only in notions of comity. Both were decided before the Supreme Court announced more stringent constitutional requirements in *Clark v. Williard*, 294 U. S. 211 (1935). To the extent that those cases permit the title of a foreign statutory successor to be subordinated to the liens of local creditors acquired after his appointment, they are overruled.

Our decision today is consistent with the policy of this State to avoid preferences to local creditors, where ratable distribution of an insolvent's assets can be made to all creditors wherever situated. See *Commonwealth ex rel. Schnader v. Consolidated Indemnity and Insurance Company*, 362 Pa. 561, 566, 67 A. 2d 434 (1949). The Maryland Insurance Commissioner is bound by statute to make such an even-handed distribution, and it is clear that Pennsylvania citizens will be justly treated in any proceedings before him.[2]

If plaintiff Arroyo were permitted to satisfy his claim in full by means of the present suit, his action would diminish the total assets to be distributed to all creditors, wherever located. Such a result would be grossly inequitable to those, including other Pennsylvania residents, who have proved their claims before the Maryland receiver.

The order of the lower court dismissing appellant's petition to dissolve the attachment without bond is reversed, and the attachment is hereby dissolved.

---

[2] "In a delinquency proceeding against an insurer domiciled in this state . . . claims owing to residents or nonresidents shall be given equal priority of payment from general assets regardless of where such assets are located." Uniform Insurer's Liquidation Act, Md. Code Annot. (1957), Article 48A, §150(1).